McGUIRE v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Division, Second Department. April 21, 1905.)

1. CARRIERS—INJURY TO PASSENGER—NEGLIGENCE.

In an action for the death of a passenger owing to her having fallen on an icy platform at a station in front of an approaching train, whether defendant had exercised reasonable care in maintaining the platform in a reasonably safe condition was for the jury.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 1147, 1153.]

2. SAME—CONTRIBUTORY NEGLIGENCE.

A passenger walking on an icy platform at a station, and killed by slipping from the platform onto the track in front of an approaching train, cannot be said, as a matter of law, to be guilty of contributory negligence; she having a right to rely on the assumption that defendant had performed its duty in maintaining the platform in a reasonably safe condition.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1363.]

3. SAME—EVIDENCE.

In an action to recover for the death of plaintiff's intestate by falling from a slippery station platform in front of an approaching train, evidence *held* to sustain a verdict for plaintiff.

Appeal from Trial Term, Orange County.

Action by Catharine McGuire, as administratrix of the estate of Mary McGuire, deceased, against the Interborough Rapid Transit Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

Sidney Smith, for appellant.
Edwin S. Merrill, for respondent.

MILLER, J. This is a statutory action to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant between 12 and 1 o'clock on the afternoon of the 4th day of April, 1903. The evidence on the part of the plaintiff tended to show that it was a cold, stormy day, with rain in the morning, followed by sleet and snow, which continued up to the time of the accident; that at a point on the platform of the defendant's station where passengers alight from and board its trains, north of the covered portion of the platform, snow and ice had formed by reason of persons tramping on the snow as it fell, or in some manner, so as to form a hard, glary, slippery surface, a quarter of an inch thick, upon which the plaintiff's intestate slipped, falling in front of an approaching train, thereby receiving injuries from which she immediately died. On the part of the defendant it was claimed that it employed a porter at this station, who was required during a storm to keep the boards exposed to the weather, or which could become slippery either by getting wet or by the formation of ice, sanded; that in fact its porter had on the morning in question discharged this duty; that at the time of the accident there was no snow or ice on the platform, which was thoroughly sanded; and

that the injuries to plaintiff's intestate were received, not as the result of slipping upon any formation of ice and snow, but by her own act in deliberately jumping onto the tracks in front of the approaching train.   The issues raised by these conflicting claims were fairly presented to the jury, with the result that they were resolved in favor of the plaintiff's contention.   The learned trial court charged the jury that the defendant was only obliged to use reasonable care to provide the passengers a reasonably safe place on which to walk as a passageway to and from trains.   The plaintiff's intestate was a passenger of the defendant, having purchased a ticket and deposited it in the box kept for the purpose before entering upon the platform.

The defendant urges three grounds for reversal of the judgment: First, that the defendant was not shown to have been guilty of negligence; second, that the plaintiff's intestate was not shown to have been free from contributory negligence; and, third, that the verdict is against the weight of evidence.

As to the first proposition, the defendant relies upon the case of Kelly v. Manhattan R. Co., 112 N. Y. 443, 20 N. E. 383, 3 L. R. A. 74, and cases therein cited, and upon the case of Rusk v. Manhattan R. Co., 46 App. Div. 100, 61 N. Y. Supp. 384.   In each of those two cases a person, upon descending from the station of the defendant to the street, had slipped upon a formation of snow and ice on one of the steps of the stairway leading to the street, which in the Rusk Case was the result of a storm then in progress, and in the Kelly Case was the result of a storm just recently ceased, in the early hours of the morning, the accident having happened between half-past 5 and 6 o'clock; and in this respect the two cases are similar to the case at bar.   In each of the two cases cited it appeared that the defendant had furnished a covered stairway, with hand rails, and pieces of rubber on each step to prevent slipping, and it was held that the situation thus presented was not so obviously dangerous to travelers as that the defendant was bound to anticipate that injury might be sustained by reason of it, and that the defendant was not liable for not immediately removing the snow and ice after it formed, or because it did not sprinkle sand, ashes, or sawdust upon the ice and snow; the court saying in the Kelly Case, quoted with approval in the Rusk Case:

"The failure to throw ashes or sawdust or something of that character upon the steps during the storm cannot be regarded as negligence, because the continuance of the storm would soon render the steps as slippery as before."

The case at bar, however, is clearly distinguishable from the cases cited.   Here the accident occurred at midday at a place where the passengers stepped to and from trains, and the evidence warranted the jury in finding that the defendant did in fact apprehend danger to passengers from this very cause, because it kept a servant upon this platform for the purpose of keeping it free from snow, and of keeping places sanded that might otherwise become slippery. The jury have found that this servant did not properly discharge the duty imposed upon him by the defendant, and his negligence as to

the plaintiff's intestate was the negligence of the defendant. The rule relied upon by the appellant as to the duty of municipal corporations, that there must be sufficient time after the existence of the defect to give the municipality notice, cannot apply to the defendant at a place where a servant is stationed, who in fact does have immediate notice of the situation as it arises. We think that, even during the continuance of a storm which makes the place slippery and dangerous where persons alight from and board the defendant's trains, a jury might find that reasonable care required the defendant to adopt some measure to lessen the danger, and if sanding would prove efficacious, if only for a short time, that it cannot be held, as matter of law, under the peculiar facts as disclosed in this case, that it was not the duty of the defendant to adopt that measure because the continuance of the storm would require its repetition. It is to be noted that in the Kelly Case the trial court had charged the jury that the defendant "was required to use all the skill, all the diligence, and all the care that the most cautious human being would use if he were looking after the protection of his own life and health"; and the court held that this was an erroneous rule, and did not apply to the maintenance of the station, platform, approaches, etc. We think this case is governed by the case of Weston v. New York El. R. Co., 73 N. Y. 595, and that the evidence warranted the submission to the jury of the question whether the defendant had exercised reasonable care in maintaining this platform in a reasonably safe condition, and that it cannot be said, as matter of law, that the plaintiff was guilty of contributory negligence, because she had a right to rely upon the assumption that the defendant had performed this duty. Weston v. New York El. R. Co., supra; Ayres v. D., L. & W. R. Co., 158 N. Y. 254, 53 N. E. 22.

We cannot say from this record that the verdict is against the weight of evidence. Only two witnesses saw the plaintiff go off from the platform in front of the approaching train. One of these (the motorman of the defendant) testified that she jumped off. The other, who claimed he was standing upon the platform near the plaintiff, waiting to board the train, testified that she slipped on the ice, and fell off; and, while his explanation of how he happened to be at this station at this time is not entirely satisfactory, he is corroborated as to the fact of his being there, and as to the condition of the platform where the plaintiff's intestate is claimed to have slipped, by another witness.

Reliance is placed by the appellant upon the exclamation, said to have been made by the sister of the intestate upon hearing a newspaper paragraph read that evening describing the accident, "Oh, my! there is something that sounds like Mary!" as tending to support the defendant's theory of suicide; indicating that the friends of the intestate were apprehensive that such an event might occur. This would have some force if the record disclosed what the paragraph read contained. If it contained a description of the deceased, the exclamation would be accounted for upon a different theory than that urged by the appellant.

It is also claimed that the pocketbook, hat, hatpins, and two side combs of the intestate were found upon the platform from which she either jumped or slipped, and it is claimed that this tends strongly to support the appellant's contention. This also would have some force if it clearly appeared, as it does not, what was the exact location and position of these articles when found. The witness finding them testified that they were "in a row, as if they had been placed there," but this is not entirely satisfactory. In the violent effort to save herself, she might have dropped the pocketbook; and her hat, with the hatpins and combs, might easily have been thrown off. There was a sharp conflict between the witnesses as to the facts. The two circumstances relied upon by the appellant as establishing its contention are as susceptible of an explanation favorable to the plaintiff as to the defendant, and, under these circumstances, we should not interfere with the determination of the jury.

The judgment and order should be affirmed, with costs. All concur.

