GUS BOTTALICO, Respondent, *v.* CITY OF NEW YORK, Appellant.

First Department, March 17, 1953.

*Fred Iscol* of counsel (*Seymour B. Quel* with him on the brief; *Denis M. Hurley, Corporation Counsel*), for appellant.

*Samuel S. Sturim* of counsel (*Jacob D. Fuchsberg* with him on the brief; *Manes, Sturim & Donovan*), for respondent.

PECK, P. J. Plaintiff was injured by falling down the subway steps leading from the street to the 149th Street–3rd Avenue station of the Lenox Avenue subway. It is his claim that the fall was caused by his left heel catching on a loose screw protruding one half to three quarters of an inch above the metal plating of a step.

Plaintiff was rendered unconscious by the fall, his injury was serious, and he was hospitalized for a period of time. All he could testify as to the cause of the accident was that his foot " caught on something ". The only evidence as to what his foot caught on was supplied by plaintiff's son, who was accompanying him at the time of the accident. It is upon the son's testimony that plaintiff's case rests, both as to the existence of the protruding screw and as to constructive notice to the city of the alleged defective condition. The only contemporaneous record made of the cause of the accident was the hospital record, from which it appears that plaintiff " slipped ". As plaintiff's son accompanied him upon his admission to the hospital, presumably the information incorporated in the hospital record as to the cause of the accident came from either plaintiff or the son.

The step construction at the time and place of the accident consisted of a concrete base into which wooden blocks were laid, topped with steel plates fastened to the step by screws going into the wood. There were five wooden blocks under each plate and two screws were inserted into each block, so there were ten screws in each plate. Plaintiff's son testified that at the time of the accident the plate from which the screw protruded was loose and wobbly. The " notice " to the city of this condition consisted of the testimony of the son that he used the same stairway two and one-half to three weeks previously and the same plate was wobbly at that time and the screws were loose.

This was on the seventh or eighth step, the same step upon which his father fell, and he noticed on this prior occasion the same exact screw sticking up. He had spent five to seven seconds looking at that screw on the prior occasion. As he said, the screw was in the path of anyone who would be walking down the stairs, and we would have to assume from the testimony that this condition continued for two and one-half to three weeks until his father eventually fell over it. He testified that on the occasion of the accident he actually saw the front part of the heel of his father's left foot catch on the screw on the seventh or eighth step.

There was no other testimony from anyone as to the existence of a defective step or loose screw on this stairway at the time of the accident or at any time.

As against the evidence of plaintiff's son, the log book of the board of transportation showed that the stairway in ques-

tion had been inspected by a maintenance inspector two weeks prior to the accident and was found to be in good condition; the station clerk testified that he made his regular inspection of the stairway on the day of the accident and found everything in order, and that he inspected the stairway again immediately after the accident and noticed no loose screw or anything wrong with any step; the porter at the station testified with respect to his daily cleaning of the stairway and that he noticed nothing wrong with any step or any loose screw either before or after the accident; and the city detective who responded to the ambulance call in connection with the accident testified that the son pointed out the area from which his father started to fall and he looked the stairway over carefully and found it was in good condition, with no loose screws or plate. As he further testified, the son said he did not know how his father fell. It was part of this officer's job to try to ascertain how plaintiff fell and his inspection for the purpose indicated nothing wrong with the stairway. More particularly, he testified that if there were a screw out of place or a plate loose, he would have noted it in his memorandum book, which showed nothing of the kind.

Concededly, there is in this record a formal and even pat compliance with the requisite of notice. We find the testimony altogether incredible, however. After all discount is made of the testimony of subway employees as to the condition of the step on the day of the accident, and ignoring the testimony of the police officer and assuming that there was some defect in the step at that time, we cannot believe for a moment that such a condition had existed and gone unnoticed by others and unrepaired for two and one-half to three weeks, or that upon such prior occasion plaintiff's son had stood on the exact spot and contemplated the particular loose screw so that he could identify it with such exactness two and one-half to three weeks later and say that he actually saw the front of his father's left heel catch on that screw before he fell.

Mindful as we are of the weight to be given a jury's verdict where the facts are disputed and issues of credibility are presented, we are not required to give credence to a story so inherently improbable that we are morally certain it is not true.

The judgment appealed from should be reversed, with costs to the appellant, and a new trial ordered.

CALLAHAN, BREITEL, FOSTER and BERGAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.