Eugene **O'CONNOR**, Plaintiff-Appellant,

v.

The **PENNSYLVANIA RAILROAD COMPANY**, Defendant-Appellee.

No. 6, Docket 26947.

United States Court of Appeals
Second Circuit.

Argued Oct. 1, 1962.

Decided Oct. 18, 1962.

Augustin J. San Filippo, New York City, for plaintiff-appellant; Maurice N. Nessen, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant-appellee; David J. Mountain, Jr. and James S. Rowen, New York City, of counsel.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

This action for negligence, commenced in the Supreme Court of the State of New York, was removed to the United States District Court for the Eastern District of New York by reason of the diversity of citizenship of the parties. A trial was held in which the jury found for the plaintiff. Upon proper motion by the defendant, Judge Christenson, sitting by designation, directed judgment for the defendant notwithstanding the verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Judge Christenson held "that as a matter of law the evidence before the jury was insufficient to show that the defendant was negligent or that its negligence, if any, proximately caused the plaintiff's fall and consequent injuries * * *." From this judgment, the plaintiff appeals.

The plaintiff's cause of action arises from his fall during a snowstorm on a terrace of the Pennsylvania Station building on the morning of February 16, 1958. The plaintiff claims to have slipped on a patch of ice on the terrace's marble floor, which condition he alleges was caused by the negligence of the defendant. The plaintiff submitted evidence of injury to his hips and legs resulting from the accident. The defendant, at trial, did not direct itself to the issue of damages, but solely to the issue of negligence.

We affirm the judgment of the court below, and find that the evidence adduced at trial so overwhelmingly points in favor of the defendant's contentions that it was proper for Judge Christenson to set aside the verdict of the jury and enter judgment for the defendant *non obstante veredicto*.

Pennsylvania Station is bounded on the north by Thirty-Third Street and on the south by Thirty-First Street; its main entrance is on Seventh Avenue and Thirty-Second Street, toward which faces the east side of the terminal building. On either side of the main entrance is a long marble terrace bounded on the outside by large pillars supporting a high roof. The terrace leading south from the main entrance, toward Thirty-First Street, is roughly six to seven feet wide; opposite the pillars lining the left-hand side of the terrace as one walks south, is a wall, solid except for a door leading to the railroad stock transfer office. It is near the first pillar of the terrace, close to the main Seventh Avenue entrance to the building, that the plaintiff, Eugene O'Connor, slipped and fell at approximately 7:20 a. m. on Sunday, February 16, 1958.

Mr. O'Connor had ridden the BMT subway from his home to Thirty-Fourth Street, walked underground to Seventh Avenue and ascended the IRT exit stairs at the north end of the main entrance to Pennsylvania Station at Seventh Avenue and Thirty-Second Street. As he ascended the steps leading from the subway and into the rotunda of the terminal building, Seventh Avenue and the public sidewalk were a few feet to his left. It was snowing heavily that morning, and had been the night before. The plaintiff was on his way to Thirty-First Street to attend church, and as he reached the top of the stairs leading into the rotunda of the station, he decided not to go out into the street at the closest access to it but instead to walk along the marble terrace leading to Thirty-First Street. There are five steps at the south side of the main entrance leading up to the terrace. The plaintiff ascended those steps and then fell somewhere in the vicinity of the first pillar, on what he described as a "rugged" patch of ice "roughly two by four feet". The usual conflict of testimony as to the condition of the premises was present here as in most negligence suits. There was testimony on behalf of the plaintiff that the

center of the terrace floor was almost completely clear of snow while there was an accumulation of snow along the edges. The plaintiff testified that the ice on which he slipped was dirty gray and that all the irregular bits and patches of ice on the stone terrace floor were dirty. He further said that he did not remember whether the falling snow was being blown and whipped. The defendant submitted testimony to the effect that there was an accumulation of approximately two inches of wet snow on the terrace floor and that a gale was blowing the snow onto the terrace, which showed no traces of ice.

The law of New York [1] was construed by the judge in his instructions to the jury and by both parties in presenting their case to warrant a finding of negligence only if, among other things, the ice or snow upon which the plaintiff slipped had persisted from snowfalls earlier in the month of February. The plaintiff conceded that if the ice or snow upon which he slipped was a prod-uct of the snowfall that had started the evening before and continued up until the time in question, then the defendant could not be found liable.[2] While the law in this area is not clearly settled, there may well be precedent in the law of New York which would have imposed an obligation upon the defendant to clear off the terrace during the subsisting snowfall, or at least have made this ques-tion one for the jury.[3] But since the plaintiff chose to base his claim to recovery solely on a failure to clear off the traces of previous snowfalls, and since, so far as the record indicates, the rule of law was accepted by the plaintiff at trial and is apparently unquestioned on appeal, our only concern is with the question whether a reasonable jury could find that the cause of the plaintiff's injury was his slipping upon snow or ice preexisting the snowfall of February 15 and 16. We believe that they could not so find.[4]

The official United States Weather Bureau report reveals that a "trace"

---

1. The cause of action arose in New York and suit was brought there. New York rules of negligence law are therefore controlling. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. In his summation before the jury, counsel for the plaintiff said, "I'll be the first to admit that if he fell on the snow that accumulated that particular morning, that that snow and ice that he fell on was the one that just freshly fell, that had just gotten there this morning, then I say you should let the Pennsylvania Railroad out of the picture." (Transcript, pp. 87–88.)

3. See, e. g., Bordonaro v. Bank of Blasdell, 285 N.Y. 606, 33 N.E.2d 541 (1941); Amodeo v. New York City Transit Authority, 10 App.Div.2d 982, 203 N.Y.S.2d 204 (2d Dept., 1960); McGuire v. Interborough Rapid Transit Co., 104 App.Div. 105, 93 N.Y.S. 316 (2d Dept., 1905); Nimons v. Montgomery Ward & Co., 275 App.Div. 983, 90 N.Y.S.2d 409 (3d Dept., 1949). But see, e. g., Falina v. Hollis Diner, Inc., 306 N.Y. 586, 115 N.E. 2d 686 (1953); McAuley v. United Cigar Stores Co., 236 N.Y. 633, 142 N.E. 313 (1923).

4. Much effort was expended by the court below in instructing the jury on the New York law regarding the distinction between invitees and licensees. Compare Baker v. Seneca Hotel Corp., 265 App. Div. 41, 37 N.Y.S.2d 819 (4th Dept., 1942), and Danna v. Staten Island Rapid Transit Ry., 252 App.Div. 776, 300 N.Y. S. 437 (2d Dept., 1937), with Heskell v. Auburn Light, Heat & Power Co., 209 N.Y. 86, 90–92, 102 N.E. 540, L.R.A. 1915B, 1127 (1913). See, for a relevant discussion of this troublesome distinction, 2 Harper & James, The Law of Torts § 27.12 at 1484–1486 (1956), and Prosser, "Business Visitors and Invitees", 26 Minn.L.Rev. 573, 585–589 (1942). He apparently thought this charge was necessary because the duty to an invitee is that of refraining from negligence while the duty to a licensee is merely that of refraining from more affirmative forms of misconduct. We find no reason to reexamine the finding, necessarily entailed in the jury's verdict, that the plaintiff was an invitee rather than a licensee. Even if we grant that the plaintiff was indeed an invitee, we still find that the evidence at trial overwhelmingly proved that the defendant was not negligent or that, if it was, its negligence was not a cause of the plaintiff's injury.

of snow or sleet fell at Battery Place in New York City on February 7, 9 and 12, 1958. A "trace" is defined as an amount too small to measure. The same report reveals that a record was kept of the amount of snow, sleet, or ice on the ground at 6:50 a. m. of the days immediately prior to the snowfall of February 15 and 16. The record shows that there was no trace of such precipitation on the ground on any day between February 7 and the date of the snowfall in question. At the Central Park Meteorological Observatory, 2.1 inches of snow fell on February 7, and but a trace of precipitation remained on the ground there from February 9 until February 15.

The United States Weather Bureau records show that snow commenced falling at roughly 3 p. m. on the day before the plaintiff's accident and continued without pause until some time after the accident occurred. The accumulation of snow at Battery Place totalled some nine inches, with snow drifts up to two feet. From midnight of February 16, strong winds, roughly twenty miles an hour, accompanied the snowfall. From 8 p. m. that evening until past 2 a. m. on the morning of the 16th, the predominant wind direction was from the northeast, thus casting the falling snow onto the Seventh Avenue terrace for many hours. The Weather Bureau records also reveal that there was a wind velocity of 29 miles per hour at 6 a. m.; at 7. a. m. it was 37 miles per hour with gusts up to 52 miles per hour; and at 8 a. m., shortly after plaintiff's accident, the average wind velocity was 41 miles per hour with gusts up to 54 miles per hour. The weather records referred to conditions throughout the morning as "blowing snow."

All of these factors, supported by unquestioned documentary evidence, tend strongly to contradict the evidence offered on behalf of the plaintiff. Even if it could reasonably be assumed that some traces of snow from the earlier February snowfalls might possibly have persisted on the terrace floor through some negligence of the defendant, the evidence overwelmingly supports the inference that the snow or ice upon which O'Connor fell at 7:20 a. m. on February 16 was a product of the snowfall raging at the time. To warrant submitting this case to the jury, it was incumbent upon the plaintiff to offer other evidence which could more convincingly overcome the proven physical facts offered on behalf of the defendant.

As we have already stated, this action was brought in a federal court by reason of the diverse citizenship of the parties; the substantive questions of negligence law are governed by the laws of the state of New York. The question whether the sufficiency of evidence to take the case to the jury is to be controlled by state or federal principles has recently been left open by the Supreme Court. See Dick v. New York Life Ins. Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); 2B Barron & Holtzoff, Federal Practice and Procedure §§ 871.1, 1072 (1961). We need not decide that question because we find that the federal and state standards are substantially similar. See Presser Royalty Co. v. Chase Manhattan Bank, 272 F.2d 838, 840 (2d Cir. 1959).

■■ "The propriety of granting or denying a motion for a directed verdict [or for judgment *non obstante veredicto*] is tested both in the trial court and on appeal by the same rule. The trial court must view the evidence and all inferences most favorably to the party against whom the motion is made. The reviewing court must do the same with respect to a judgment entered on a directed verdict or the denial of a motion for a directed verdict or a judgment entered notwithstanding the verdict." 2B Barron & Holtzoff, Federal Practice and Procedure, § 1075 at 378 (1961). In granting such a motion for a judgment notwithstanding the verdict, and in affirming it on appeal, the function of the jury is not usurped. The jury is simply not being permitted to make unreasonable findings of fact. The case is withdrawn from them "as a matter of law" because no jury could reasonably bring in a verdict for the

opponent of the moving party. To decide upon the propriety of granting this motion, the court looks to the substantial evidence tending to bolster the case of the non-moving party and draws all reasonable inferences therefrom. But the evidence cannot properly be deemed substantial nor the inferences reasonable if they are contrary to proven physical facts. The inferences which may be drawn must be within the range of reasonable probability, Ford Motor Co. v. McDavid, 259 F.2d 261 (4th Cir.), cert. denied, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958) and must not be at war with undisputed facts.[5]

This is not a case where two competing versions of the facts, depending upon the credibility of oral testimony, are to be resolved but instead one where the uncontested documentary evidence of weather conditions at the time in question overwhelms the plaintiff's testimony so as to render the inference sought to be drawn unreasonable. Here, the documentary evidence reveals that the snowfall of February 15 and 16 was so severe that it would be grossly unreasonable to find that the plaintiff's icy nemesis was the result of the traces of snow falling several days earlier and of ground precipitation too small to measure, rather than of the snowfall in progress. Since the weather records so overwhelmingly outweigh the oral testimony offered in behalf of the plaintiff, cf. Continental Can Co. v. Horton, 250 F.2d 637, 643 (8th Cir. 1957), State of Washington v. United States, 214 F.2d 33, 41 (9th Cir. 1954), Kansas City Public Service Co. v. Shephard, 184 F.2d 945, 947 (10th Cir. 1950), it would have been improper to permit the jury's verdict to stand.

Affirmed.

5. The New York precedents are in accord. Thus, it has been held that an issue ought not to be submitted to the jury unless there is evidence "that ought reasonably to satisfy a jury that the fact sought to be proved is established." Matter of Case, 214 N.Y. 199, 204, 108 N.E. 408, 410 (1915) (Cardozo, J.), "Mindful as we are of the weight to be given a jury's verdict where the facts are disputed and issues of credibility are presented, we are not required to give credence to a story so inherently improbable that we are morally certain it is not true." Bottalico v. City of New York, 281 App.Div. 339, 341, 119 N.Y.S.2d 704, 706 (1st Dept., 1953).