MANSFIELD, Circuit Judge:
The principal issue raised by these consolidated appeals is whether Congress’ retroactive repeal of legislation requiring a state to waive its Eleventh Amendment immunity and to consent to suit against it in order to receive funds under the Medicaid Act nullifies a consent to suit already given by the State of New York, and entitles it to assert its immunity in pending litigation based on the consent. We hold that the legislation has a retroactive nullifying effect. Accordingly, we affirm the district court’s dismissal of the pending suit instituted against New York State officials on the basis of the consent.
Medicaid is a cooperative federal-state welfare program designed to provide health care for the needy through federal grants to participating states, subject to certain conditions. Under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., hospitals that provide care to Medicaid-eligible patients in a participating state are reimbursed from funds jointly provided by federal and state authorities.
In May 1976 appellants, a group of public and voluntary hospitals in the State of Nety York (State), brought suit in the Southern District of New York against various officials of the State and the Secretary of the Department of Health, Education and Welfare (HEW), seeking damages, declaratory, and injunctive relief on the ground that the State had, in violation of the Medicaid Act, 42 U.S.C. §§ 1396, et seq., and regulations promulgated thereunder, 45 C.F.R. § 250.-30(a)(2), amended the formula for reimbursing each hospital for providing in-patient services under the State’s Plan for medical assistance. In substance, the amendments froze payments to be made for services in 1976 at rates paid in 1975. The plaintiffs claimed that the State’s amendments to the reimbursement formula were illegal because they were put into effect without first obtaining the approval of the Secretary of HEW, and because they did not reimburse appellants for the “reasonable costs” of services provided by them to Medicaid patients, as required by the Act.[1]
*793 On the plaintiffs’ motion for a preliminary injunction to prevent use of the amended formula, the State argued that the Eleventh Amendment barred any award of monetary relief to the hospitals. The plaintiffs contended, however, that the State had waived its Eleventh Amendment immunity by executing on March 30,1976, a “consent to suit” according to a provision contained in the Medicaid Act, 42 U.S.C. § 1396a(g), which became effective January 1,1976, requiring states participating in the Medicaid program to “consent ... to the exercise of the judicial power of the United States” with respect to claims arising out of the furnishing of in-patient hospital services. Any state that did not comply with this requirement was penalized a percentage of the total federal Medicaid funds to which it would otherwise have been entitled.[2] Pursuant to this law, New York had executed a consent to suit.
In August, 1976, Judge Morris E. Lasker held that New York’s compliance with the mandatory waiver requirement eliminated any Eleventh Amendment bar to the lawsuit, and that 42 U.S.C. § 1396a(a)(13)(D) required prior HEW approval of amendments to the State reimbursement formula. Since this approval had not been obtained prior to the State’s implementation of the amended formula, the defendants were permanently enjoined from implementing the challenged regulations until HEW had approved them; furthermore, they were directed to recalculate the amounts owed to members of the plaintiff class under the previously approved reimbursement formula, and to pay the hospitals any additional money that was owing.
The defendants sought review of the district court’s decision, but shortly after the State’s notice of appeal was filed, the Secretary of HEW approved the principal regulations that had been found invalid for lack of prior approval. On August 17, 1976, we remanded the case to the district court to decide whether the Secretary’s belated approval would permit retroactive application of the amended reimbursement formula to the period beginning January 1, 1976. On November 5, 1976, Judge Lasker concluded that the amended reimbursement formula could be implemented only from the date of the Secretary’s approval — August 16, 1976 —and not from January 1, 1976, the date *794 when the State had purported to put it into effect. Judge Lasker ordered the defendants to recompute the reimbursement rates for the period prior to August 16, and when a stay pending appeal was denied the defendants performed this recomputation and made payments totalling up to $40 million to the hospitals.
In the meantime, on October 18, 1976, while the case was sub judice in the district court, the President signed Pub.L. 94r-552, which repealed the Medicaid Act’s mandatory waiver of immunity provision, “effective January 1, 1976.” Neither party brought the repeal to the district court’s attention until after its November 5 decision had been filed and the payments made pursuant to that order. Upon their appeals from the district court’s August and November orders, the defendants argued that the repeal-er legislation deprived the district court of subject matter jurisdiction to award monetary relief against the State. On March 16, 1977, we remanded the case to the district court to resolve this question, which had never been presented to or considered by it, and also the question of whether the withdrawal of the monetary relief previously awarded against the State would impair the hospitals’ constitutional rights.
On August 4, 1977, the district court vacated its earlier judgment and dismissed the complaint insofar as it granted monetary relief against the state defendants, holding (1) that the repealer permitted the State to withdraw, retroactively to January 1, 1976, its consent to this suit, and to reassert its Eleventh Amendment immunity, and (2) that its ruling would not deprive the hospitals of any constitutional rights. Judge Lasker then concluded that since the State’s Eleventh Amendment immunity had been revived validly by the repeal legislation, his remedial power, consistent with the amendment, was limited to prospective relief, see Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and he questioned the utility of trying the plaintiffs’ claims against the state and federal defendants since the allegations contained in the complaint involved solely the State’s 1976 reimbursement formula, which was substantially revised in 1977.
The plaintiffs, on the other hand, contended that the 1977 amendments to the reimbursement formula were irrelevant to the issues they sought to have adjudicated. On November 18, 1977, the court granted the defendants’ motion to dismiss the complaint on the ground that the 1976 formula had “undergone substantial revision in 1977” and that, since the hospitals’ challenge related only to the 1976 methodology, “the record before us is both incomplete and stale.”
Plaintiffs appeal from both the initial decision dismissing their complaint against the State defendants insofar as it sought monetary relief, and from the subsequent decision dismissing the complaint against all but the federal defendant in its entirety.[3] The appeals have been consolidated for our review.
DISCUSSION
The determinative issue is whether Congress’ enactment on October 18, 1976, of Pub.L. No. 94-552, retroactively repealing the consent-to-suit provision of the Medicaid Act, 42 U.S.C. § 1396a(g), which had gone into effect January 1, 1976, applies to cases pending at the time of enactment of the repealer. Unless the State’s waiver of immunity continued to be effective for the period from January 1, 1976, to October 18, 1976, the pending claims against it for re-computation of the reimbursement rates would be barred by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
Neither the language of the repealer statute nor its legislative history addresses *795 the precise question of whether it was intended to allow states already engaged in litigation to withdraw previously executed consents-to-suit and to reassert their Eleventh Amendment immunity. The statute simply states:
“Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That subsection (g) of section 1902 of the Social Security Act and subsection (1) of section 1903 of such Act are repealed. “Sec. 2. The amendments made by the first section shall take effect as of January 1, 1976.”
However, the retroactive effective date is strong evidence that the repealer was intended to apply to cases brought prior to its enactment and permits the State to withdraw its consent or treat it as a nullity.
The consent-to-suit requirement was passed by Congress in late December, 1975, effective January 1, 1976. The political reaction to the requirement was immediate, widespread, and adverse. Legislation to repeal the provision was introduced in the House of Representatives just a few months after the law went into effect, and the House passed the repealer in May, 1976, within one week of the filing of this lawsuit. 122 Cong.Rec. H4280 (daily ed. May 12,1976). The Senate quickly followed suit, and the President signed the repealer on October 18, 1976. The repealer’s effective date, however, was January 1, 1976, nine months earlier — the same date as the effective date of the statute repealed. Thus Congress clearly intended “to undo completely what it had wrought” several months earlier in enacting the forced waiver provision.
The legislative history of the repeal also confirms a congressional intent along the foregoing lines. See Sen.Rep. No. 94-1240, 1976 U.S.Code Cong. & Admin.News, pp. 5648, 5650-51; H.R.Rep. No. 94-1122, 94th Cong., 2d Sess. May 11, 1976. As Judge Lasker observed,
“[B]oth reports indicate a pressing desire to remove federal court jurisdiction over suits for money judgments against states: (1) because such suits would interfere with administration of the Act and (2) because coerced consent to such suits was deemed by Congress to be an unwise, if not unconstitutional, remedy for a difficult problem. . . . Congress’ intent in enacting the forced waiver provision and in repealing it was to expand and contract, respectively, the district court’s jurisdiction over suits by Medicaid providers against the states.”
Appellants argue that the primary motive underlying the repeal was Congress’ desire to remove the penalty provision for noncompliance with the mandatory waiver, rather than to remove federal jurisdiction over suits such as this one. However, this view is not supported by the statute’s language or its legislative history. The repeal-er repeals both the waiver provision and the penalty provision of the Medicaid Act. Repeal of the penalty provision could have been accomplished without retroactive repeal of the consent-to-suit requirement.
Aside from construction of the specific statute under review, the result reached by the district court is also supported by a body of precedent to the effect that congressional withdrawal of jurisdiction from federal courts should apply not only to future but also to pending actions unless Congress specifically provides to the contrary. See Insurance Co. v. Ritchie, 72 U.S. (5 Wall.) 541, 18 L.Ed. 540 (1866); De La Rama Steamship Co. v. United States, 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422 (1953); de Rodulfa v. United States, 149 U.S.App.D.C. 154, 461 F.2d 1240, cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972). Appellants argue that this principle does not apply here, either because the precedents are distinguishable on their facts or because the consent-to-suit provision and repealer are not technically jurisdictional statutes. Neither argument is persuasive. While it is true that the consent-to-suit requirement was not technically a conferral of jurisdiction, it was the statute that enabled this suit to be brought. Without the statute, and the State’s compliance with it, a federal court could not en *796 tertain the action. Retroactive repeal of the statutory provision permitted New York to withdraw its consent, and thereby raise a constitutional bar to the exercise of federal judicial power over it. These circumstances justify application, even if only by analogy, of the general principle that a district court judgment not yet affirmed may be nullified if jurisdiction is effectively removed by valid legislative enactment during its pendency.
Furthermore, an appellate court ordinarily must apply the law in effect at the time it renders its decision, unless such application would work a manifest injustice or there is statutory direction or legislative history to the contrary. Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In an early decision, United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), the Supreme Court stated:
“[I]f subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed. . . . It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns . the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.” Id. at 110.
See in accord: Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 281, 89 S.Ct. 518, 21 L.Ed.2d 474 (1968); Ziffrin, Inc. v. United States, 318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621 (1943); Hines v. Davidowitz, 312 U.S. 52, 60, 61 S.Ct. 399, 85 L.Ed. 581 (1941); Carpenter v. Wabash Ry., 309 U.S. 23, 27, 60 S.Ct. 416, 84 L.Ed. 558 (1940).
As we have noted, the language of the statute here and its history points toward application of the repealer to pending cases. Faced with a similar situation, the District of Columbia Circuit has held that the intervening repealer requires that monetary awards entered in reliance upon the law before repeal must be vacated, de Dampitan v. Administrator of Veterans’ Affairs, 170 U.S.App.D.C. 115, 516 F.2d 708 (1974); de Rodulfa v. United States, 149 U.S.App.D.C. 154, 461 F.2d 1240, cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972). Moreover, we cannot conclude that whatever substantive rights the hospitals have will be adversely affected by withdrawal for essentially jurisdictional reasons of the monetary award previously granted. The hospitals, according to the Medicaid Act, are to be reimbursed for the reasonable costs they have incurred in providing medical services to eligible patients. Congressional removal of the hospitals’ ability to seek redress in federal court does not affect this right to reimbursement. The sole effect of the repealer is to remove one form of remedy for disputes concerning this right. The State remains obligated to reimburse the hospitals for the reasonable cost of the services they provide, and the hospitals still have recourse to the state courts and to HEW administrative proceedings if they are dissatisfied. (Indeed, we are informed by the briefs that the hospitals have an action now pending in the New York Court of Claims.) There is, therefore, no manifest injustice in remitting the hospitals to the remedies available to them prior to the congressional experiment of coercing states to acquiesce in the exercise of federal jurisdiction over claims for monetary relief.[4]
The hospitals next contend that the district court’s decision results in unconstitutional deprivation of their property interest in the earlier judgment awarding them monetary relief. The argument was rejected by the district court on the ground that *797 the hospitals possessed no vested right in the judgment entitling it to protection under the Due Process Clause because it had not yet become final and unreviewable.
The only authority cited by the hospitals in support of their contention that a non-final district court judgment, although still subject to review, nevertheless vests a constitutionally-protected property interest in the prevailing party is McCullough v. Commonwealth of Virginia, 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898). The unique circumstances of that case, however, render it clearly distinguishable. There a Virginia state bondholder had won a state trial court judgment to the effect that his bonds were genuine. Thereafter the Virginia state legislature, in an effort to repudiate the statutory right of state bondholders to use their bond coupons to pay state taxes, adopted a series of measures, including withdrawal of jurisdiction over suits to determine the genuineness of the bonds. After the Virginia Supreme Court reversed the trial court on other grounds, the U.S. Supreme Court restored the trial court judgment, holding in part that “[i]t is not within the power of a legislature to take away rights which have been once vested by a judgment.” Id. at 123, 19 S.Ct. at 142. The effect of the intervening state legislation was to expropriate the bondholders’ property without just compensation because the state had earlier provided that the bonds might be used to pay state tax liabilities, but only if the bondholders first sued to enforce that right. Legislative elimination of the right to sue thus amounted to destruction of the substantive right to use the bonds to pay tax liabilities.
The property interest in this case that is analogous to the Virginia bondholders’ statutory right is the hospitals’ right to reimbursement for the reasonable costs of providing in-patient services to Medicaid patients. Unlike the Virginia legislature’s action, congressional removal of the mandatory waiver provision does not alter the hospitals’ substantive right to reimbursement. Disputes over that right may still be litigated in the state courts and through HEW administrative proceedings. McCullough is therefore inapposite. More relevant to the determination of this case are de Dampitan v. Administrator of Veterans’ Affairs, 170 U.S.App.D.C. 115, 516 F.2d 708 (1974), and de Rodulfa v. United States, 149 U.S.App.D.C. 154, 461 F.2d 1240, cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972), both of which involved the withdrawal of federal jurisdiction after money judgments had been awarded and were pending appeal. In both cases the District of Columbia Court of Appeals found no constitutional defect in applying the repealer legislation to judgments in pending cases on appeal.
The hospitals also contend that the State should be estopped from withdrawing its consent to the suit, regardless of the repeal statute’s interpretation. The estoppel argument is that New York’s initial consent induced the hospitals to file the lawsuit in federal court and to expend substantial resources on the litigation in reliance on the availability of a federal forum to resolve their dispute with the State.
The flaw in this argument is the absence of the proper elements of any valid estop-pel — inducement and reasonable reliance. It is well established that “[á]n estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury. When this occurs, it would be inequitable to permit the first to enforce what would have been his rights under other circumstances.” Metropolitan Life Ins. Co. v. Childs Co., 230 N.Y. 285, 292-93, 130 N.E. 295, 298 (1921). The State’s consent-to-suit was not a deliberate action designed to induce the hospitals to change their position. Although the State executed a waiver of immunity, it did so under protest, maintaining from the outset that the mandatory waiver requirement was unconstitutional. This is not the kind of inducement that would sustain an estop-pel. Romano v. Metropolitan Life Ins. Co., 271 N.Y. 288, 293, 2 N.E.2d 661 (1936).
Moreover, the hospitals’ action did not constitute reasonable reliance. The House of Representatives passed the repealer less than one week after the complaint in this *798 case was filed. Surely from that point on the hospitals could not reasonably rely on the continued availability of a federal forum since legislation to restore the State’s power to assert its immunity was being enacted. Continuation of the suit in the face of this impending legislation was obviously a calculated risk on the hospitals’ part and not the sort of reliance that gives rise to estoppel.
For these reasons, we affirm the district court’s decision appealed from in Docket No. 77-6152.
The appeal in Docket No. 77-6174 requires less discussion. The hospitals’ brief principally argues that the district court abused its discretion in dismissing the complaint against all but the federal defendant because their challenge to the 1976 reimbursement formula remains for prospective adjudication. However, the record on which the hospitals seek injunctive relief is confined to the 1976 methodology for computing the reimbursement formula and, while some features of that methodology remain, it has since been substantially revised. Bearing in mind that “[t]he purpose of an injunction is to prevent future violations,” Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928), and that there apparently are other actions pending that seek to challenge the validity of the current methodology,[5] we find no abuse of discretion in Judge Lasker’s decision to dismiss the claim based solely on the 1976 methodology, whether or not it be labelled moot or the record rendered stale as a result of the 1977 revisions. The formula to be tested for prospective purposes should be the current, not an outdated, one. Public Affairs Associates Inc. v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962); United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).
Similarly, a “declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.” Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948). Judge Lasker found no purpose to be served in a declaratory judgment concerning solely the State’s 1976 reimbursement plan; the only purpose suggested to us is that a judgment in favor of the hospitals would have facilitated their claim for monetary relief in the state courts. Whether or not this is true, Judge Lasker’s decision that this would not be an appropriate use of federal judicial resources is' a reasonable exercise of his discretion. See Fusari v. Steinberg, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 591 (1975); Hagans v. Wyman, 527 F.2d 1151 (2d Cir. 1975), later opinion, 536 F.2d 525 (2d Cir. 1976).
Accordingly, we affirm. The district court will retain jurisdiction to enforce its order dated August 15, 1977, providing for restoration to the State of funds received by the hospitals pursuant to the court’s earlier orders.

. Since January 1, 1970, the State of New York has used a prospective methodology for calculating reimbursement rates for hospital in-patient services. Typically, new reimbursement rates to go into effect in a calendar year are announced before the first of that year. Hospi-tais are then able to determine how best to provide services in a way that will keep their costs at or below the announced rates.
The State defendants did not announce a new schedule of 1976 reimbursement rates on January 1, 1976. Instead, the State temporarily froze the rates for services rendered in 1976 at the 1975 reimbursement rates, allegedly without any HEW authority, while it undertook a substantial revision of its reimbursement for *793 mula. On July 1, 1976, the State promulgated a revised formula.
The hospitals first challenged the freeze, and then the amended formula, alleging that both lacked prior HEW approval and failed to reimburse the hospitals for the reasonable cost of the services provided.
The statute at issue, 42 U.S.C. § 1396a(a)(13)(D), states:
“(a) A State plan for medical assistance must—
“(13) provide—
“(D) for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, consistent with section 1320a-l of this title, which shall be developed by the State and reviewed and approved by the Secretary

. Public Law 94r-182, § 111, 89 Stat. 1054, December 31, 1975, amending 42 U.S.C. § 1396a:
“Sec. 111. (a) Section 1902 of the Social Security Act is amended by adding at the end thereof the following new subsection:
“ ‘(g) Notwithstanding any other provision of this title, a State plan for medical assist-anee must include a consent by the State to the exercise of the judicial power of the United States in any suit brought against the State or a State officer by or on behalf of any provider of services (as defined in section 1861(u)) with respect to the application of subsection (a)(13)(D) to services furnished under such plan after June 30, 1975, and a waiver by the State of any immunity from such a suit conferred by the 11th amendment to the Constitution or otherwise.’
“(b) Section 1903 of such Act is amended by adding at the end thereof the following new subsection:
“ ‘(1) Notwithstanding any other provision of this section, the amount payable to any State under this section with respect to any quarter beginning after December 31, 1975, shall be reduced by 10 per centum of the amount determined with respect to such quarter under the preceding provisions of this section if such State is found by the Secretary not to be in compliance with section 1902(g).’
“(c) The amendments made by this section shall (except as otherwise provided therein) become effective January 1, 1976.”

. The district court did not dismiss the complaint as against the federal defendant, HEW, since the agency’s role in the approval process was recurring, and the court could still review the procedural aspects of that process to determine whether they were lawful. Trial on this narrow issue of HEW’s role commenced in October, 1977, and has been concluded. - No decision has yet been filed.

. For generally the same reasons, we also reject the hospitals’ argument that they should be spared the necessity of complying with the district court’s decision requiring them to refund the payments made by the State, pursuant to the district court’s vacated order.

. The Brooklyn Hospital, et al. v. Whalen, et al., Index No. 16058/77 (Sup.Ct., County of Kings, July 27, 1977); New York City Health and Hospitals Corporation v. Califano, et al., 77 Civ. 4483 (S.D.N.Y. Sept. 9, 1977).