Michele **TALLIERCIO**, Plaintiff,

v.

**A/S D/S SVENDBORG & D/S OF 1912 A/S**, Defendant.

No. 75 Civ. 4192.

United States District Court, S. D. New York.

June 15, 1978.

Zimmerman & Zimmerman, New York City, for plaintiff by Edward D. Lory, New York City.

Haight, Gardner, Poor & Havens, New York City, for defendant, by David P. H. Watson, New York City, of counsel.

## OPINION

BONSAL, District Judge.

This action was instituted by plaintiff, an Italian national, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, against the owners of m/s Chastine Maersk, seeking damages for injuries sustained while working as a longshoreman for the Universal & Stevedoring Corp. on October 21, 1973. The case was tried non-jury on liability only.

On October 21, 1973, plaintiff Michele Talliercio was on board defendant's vessel m/s Chastine Maersk. He and his gang were engaged in loading operations in the deep tank of the # 2 hatch. Shortly after 11:00 a. m. after the gang had unhooked a draft from the inshore side of the tank, the winch operator, Eugene Grey, pulled up the bridles. One of the empty hooks caught the lower edge of the offshore deep tank cover, lifting it up out of its track. Before Grey could stop the winch, the hook pulled the cover across the hatch and a steel protecting plate broke off and struck the plaintiff. Grey testified that the winch had "tak[en] off." The plaintiff was rendered unconscious and was taken to a hospital.

Plaintiff contends that defendant shipowner was negligent in failing to provide a "key" to secure the hatch cover to the stanchion on which it rested while the cover was open. As the ship's crew was responsible for opening the covers, plaintiff claims that the defendant shipowner's negligence proximately caused the accident. The hatch boss, Mr. Saverino, testified that he had asked a crew member to secure the cover to the stanchion with a pin, but that the crew member had told him that "it was good." Saverino commenced the loading as soon as his foreman ordered him to.

The defendant contends that the covers were adequately secured by the steel lifting wires and that no pin was necessary. The Chief Officer of the vessel, Captain Neilson, testified by deposition that the key would have been used only if the lifting wires had been removed. Moreover, he testified that even if the cover had been secured to the stanchion, the stanchion would simply have been lifted out of its socket as it was only intended to withstand horizontal pressure and not an upward movement. The final accident report by Mr. Kurtz of the Port and Transportation Claims Services, Inc. points out that but for the supporting wires, the entire hatch cover would have fallen into the tank. Finally, the defendant elicited testimony from his expert witness, Captain Wheeler, that the responsibility for the accident lay in the fact that the stevedore used open hooks instead of lip hooks. Unlike an open hook, a lip hook has a small "lip" suspended below the eye of the hook which permits it to be lifted out of the hatch without snagging.

## DISCUSSION

Under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, a shipowner is only liable for those injuries proximately caused by his own negligence. *See, e. g., Munoz v. Flota Merchante Grancolombiana, S. A.,* 553 F.2d 837, 840 (2d Cir. 1977). Plaintiff argues that the failure of the crew to secure the deep tank covers to the stanchion after the hatch boss, Mr. Saverino, brought it to the attention of a crew member constituted negligence.

In *Cox v. Flota Mercante Grancolombiana, S. A.,* 577 F.2d 798 (2d Cir. May 10,

1978), the plaintiff longshoreman was working in the hold of the ship when he was struck by a falling hatch cover. The crew had been responsible for opening the hatch covers, and although they were requested by the stevedore to secure the beams with pins, they had failed to do so. Nonetheless, the Second Circuit held that the complaint must be dismissed:

"It makes no difference here whether the alleged defect was latent or open and obvious. In either case, the situation was known to the stevedore. The stevedore from its inception had complete charge of the unloading operation. Only it could give orders to its employees. . . . If the beam was dislodged by cargo being hoisted out of the hold (as has been suggested as the only possibility), then the cause of the accident was an operation entirely in the hands of the stevedore. It was the stevedore which had exclusive control of the gangs and how, when and where they worked." Id. at 802.

Here, too, the stevedore had exclusive control of his gangs and when and where they worked.

The Court is aware that the result in Cox has created some uncertainty as to the applicable law. Recently, in Canizzo v. Farrell Lines, Inc., 579 F.2d 682 (2d Cir. 1978), another panel of the Court of Appeals expressed disagreement with Cox. Id. at 686–687 n.3. In Canizzo, while the plaintiff longshoreman was travelling from one part of the ship to another to continue his work, he "slipped on a patch of grease which was partially covered by a pile of wires" which was placed there by the ship's crew. Id. at 684. The Court stressed that because of the uncertainty in construing the 1972 Amendments, a determination of liability must be undertaken on a case-by-case basis, and held that "[t]he existence of a substantial area of grease in

a narrow passageway, which should have been known to the ship's personnel, made more dangerous by the positioning by the ship's personnel of the cluster lights and wires upon the greasy area supports the finding of negligence on the part of the ship . . . ." Id. at 686. Thus, the Court emphasized the affirmative act of the ship's crew in making the greasy area more dangerous by placing wires on top of it. In the instant case, there was no affirmative act; at most, some crew members may have had knowledge of a possible hazard but the hazard was not apparent in view of the support which the lifting wires provided for the cover.[1] In his dissent in Canizzo, Judge Friendly cautioned that "[u]nless the courts keep the longshoreman's negligence action against the ship within proper bounds, the ship's situation will be worse in some respects than before since it will be deprived of its former third party action against the longshoreman's employer." Id. at 687.

Moreover, in Lubrano v. Royal Netherlands Steamship Co., 572 F.2d 364 (2d Cir. 1978), Judge Moore observed in his dissent that

"cases have found the shipowner not liable for obviously dangerous conditions, whether existing before control is relinquished to the stevedore or arising later with the knowledge of the shipowner, if the danger is such that the stevedore would be expected to correct the condition in discharging its responsibility to the longshoremen and the condition is one where the shipowner could defer to the competence of the stevedore." [Citations omitted.] Id. at 375; see Riddle v. Exxon Transportation Co., 563 F.2d 1103, 1111–1112 (4th Cir. 1977).

In Canizzo, the greasy patch on the ship's deck which was covered by the pile of wires

1. By emphasizing the affirmative act of the ship's crew, Canizzo is more in line with Lubrano v. Royal Netherlands Steamship Co., 572 F.2d 364 (2d Cir. 1978), where the plaintiff longshoreman slipped by reason of the absence of dunnage which was supposed to be supplied by defendant shipowner. The Court held that the shipowner might be liable if "the ship's

officer approved and joined in the direction that the men keep working, although the dunnage was not there," id. at 367—an affirmative act on the part of defendant shipowner. In the instant case, there was no evidence that the ship directed the stevedore to keep his men working.

was not a hazard so connected with the stevedore's expertise in loading operations that "the shipowner [should] defer to the competence of the stevedore." On the other hand, in the instant case, whether the cover should have been secured to the stanchion as well as held by the lifting wires was a condition which "the shipowner could defer to the competence of the stevedore" and which "the stevedore would be expected to correct." Likewise, in *Cox*, the danger of leaving the beams unsecured was one which the stevedore could best recognize such that "[it] would be expected to correct the condition in discharging its responsibility to the longshoremen" and "the shipowner could defer to [its] competence."

In any event, assuming defendant shipowner was negligent in not securing the cover to the stanchion, its negligence was not the proximate cause of the accident. Plaintiff has not shown that the securing of the cover with a pin would have prevented the accident. Even if the cover had been secured to the stanchion by a pin, the accident could have happened. Captain Neilson, the Chief Officer of the vessel, testified that securing the cover to the stanchion would not have made any difference. Defendant's expert, Captain Wheeler, testified that the use of ordinary hooks on the bridles caused the accident, which could have been prevented if the longshoremen had used lip hooks.

Accordingly, judgment may be entered for the defendant with costs.[2]

Settle judgment on notice.

---

**2.** Plaintiff also claims that the winch was defective. While Grey, the winch operator, testified that the winch had "tak[en] off," he made a statement at the time of the accident that there was nothing the matter with the winch (plaintif's Exhibit 4). There was no evidence that if the winch was defective that the shipowner knew about it, although there was evidence that the stevedore did.

Moreover, the accident could have been prevented if the stevedores in the hold had steadied the hook before the winch operator lifted it out of the hold. By ignoring the hook's swinging motion, the hold men and the winch operator allowed the hook to catch the lower edge of the deep tank cover, causing the accident.