**Joseph PASTORELLO, Plaintiff,**

**v.**

**KONINKLIJKE NEDERL STOOMB MAATS, B.V., Defendant.**

**No. 77 C 701.**

United States District Court,
E. D. New York.

Aug. 30, 1978.

**2.** The evidence did not support plaintiff's claim of retaliation. His gun was taken from him because it was not deemed necessary to perform his duties.

Paul A. Gritz, Brooklyn, N. Y. (Martin L. Katz, Brooklyn, N. Y., of counsel), for plaintiff.

Burlingham, Underwood & Lord, New York City (William M. Kimball, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, a longshoreman, brought this action against the defendant shipowner, alleging that he was injured on the vessel Archimedes as a result of defendant's negligence. The jury found defendant negligent, and plaintiff contributorily negligent to the extent of 50% of the cause of the injury. Judgment for $31,500 was entered for plaintiff.

Defendant has moved for a directed verdict or, alternatively, for an order setting aside so much of the verdict as found defendant's negligence was 50% responsible for plaintiff's damages and entering judgment for defendant notwithstanding the verdict.

Plaintiff, employed by Northeast Stevedoring Co., injured his wrist while helping to stow No. 2 'tween deck of the Archimedes. He claims that he slipped and fell on a steel deck where there was sand mixed with small pebbles. There was evidence from which the jury could have found that some longshoremen complained to the hatch boss about the condition, and he in turn asked a ship's officer to have it removed.

Defendant's motion draws into question the appropriate criteria for determining whether the vessel's "negligence" caused the injury. Defendant urges that it is not liable because control of the vessel was relinquished to the stevedoring company, which was responsible to correct any unsafe condition and on which defendant was entitled to rely. Defendant also contends that the jury could not properly find from the evidence that defendant should reasonably have foreseen the injury.

Since the various panels of the Second Circuit are not in complete harmony as to the circumstances in which a ship may be found liable in negligence to a longshoreman [compare Cox v. Flota Mercante Grancolombiana, S. A., 577 F.2d 798 (2d Cir. 1978) with Lopez v. A/S D/S Svendborg, 581 F.2d 319 (2d Cir. 1978) and Canizzo v.

*Farrell Lines, Inc.,* 579 F.2d 682 (2d Cir. 1978)], it is perhaps appropriate for this court to set forth its understanding of the applicable law.

The 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (the "Act") made changes in the remedies an injured longshoreman might pursue. The amendment under which this action is brought, 33 U.S.C. § 905(b), provides, in pertinent part:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

Under this section a longshoreman may bring "an action" against the vessel for an injury "caused" by the vessel's "negligence", but "no such action" is permitted if the injury was "caused" by the "negligence" of the stevedore's employees. Read literally, the language presupposes only one "cause" for an injury, the vessel's negligence or that of the stevedore. But such a reading would be fatuous. Causation is a web, not a chain, *United States v. Morris,* 451 F.Supp. 361 (E.D.N.Y.1978), and for any specific event there are myriad causes of greater or lesser immediacy and significance.

Plainly the acts or omissions of both the vessel and the stevedore can contribute to an occurrence in which injury occurs. The task of the court is to determine what Congress intended where both have been negligent and to translate that intention into understandable rules.

The 1972 amendments were passed in the light of conditions largely shaped by two Supreme Court decisions. In 1946 the Court decided *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), holding that the shipowner's absolute obligation of seaworthiness extended to longshoremen doing the ship's work but employed by an independent stevedore. Shipowners thereupon became liable without fault for injuries to longshoremen caused by unseaworthy conditions, including conditions created by the stevedore's employees. *Mahnich v. Southern S. S. Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944).

In 1956 the Supreme Court held in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), that a shipowner held liable to a longshoreman for unseaworthiness caused by the stevedore's employees could recover over against the stevedore, on the theory that it had breached its implied warranty of workmanlike service to the vessel. The Court rejected the argument that the Act precluded a claim over. Thus the stevedore, though under the Act it could not have been sued directly by the longshoreman, became liable to indemnify the shipowner.

Congress concluded in 1972 that amendments to the Act were long overdue. Report of the House Education and Labor Committee, H.R.Rep.No.92–1441, 92nd Cong., 2d Sess., 1972 U.S.Cong. & Admin. News, p. 4698 (herein "House Report"). The maximum benefit of $70 a week was deemed far too low in the light of the average longshoreman's weekly wage over $200 in some ports. The employers were willing to increase the benefits but sought in return to escape the consequences of the *Seas Shipping Co.* and *Ryan Stevedoring Co., Inc.* decisions.

The Congressional Committee rejected a proposal by the industry that vessels be treated as joint employers with the stevedores and that the vessel's liability be restricted to compensation under the Act. The Committee believed that where a longshoreman "is injured through the fault of the vessel", it should be liable for damages "just as land-based third parties in non-maritime pursuits are liable for damages when, through their fault, a worker is injured." House Report, p. 4702.

The combination of the holdings in the *Seas Shipping Co.* and *Ryan Stevedoring Co.* cases had substantially increased the cost of compensation insurance for longshoremen although maximum benefits had remained constant and injury frequency rates had declined. *Id.* Accordingly the Committee thought it fairer to increase the compensation benefits, to require that the vessels' liability to third parties be predicated not on unseaworthiness but on negligence, and to abolish any claim over by the vessel against the stevedore.

Vessels were therefore placed "in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits." House Report, p. 4703. "The purpose", as the Committee put it, was "to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment" and not to endow him with any special maritime theory of liability whether called unseaworthiness, non-delegable duty, or the like. *Id.*

To permit actions against the vessel based on negligence would, the Committee thought, "meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work." Thus, "nothing" in the bill, the Committee cautioned, "is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition." House Report, p. 4704.

The Committee gave as a specific example "where a longshoreman slips on an oil spill on a vessel's deck and is injured", saying that the amendments "would still permit an action against the vessel for negligence." The Committee then set forth the prerequisites to recovery: "To recover he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances. The vessel will not be chargeable with the negligence of the stevedore or employees of the stevedore." *Id.*

The Committee contemplated that under "this standard" there would be disputes as to whether the vessel was negligent in a particular case and that these would have to be resolved by litigation applying "accepted principles of tort law", just as disputes "involving alleged negligence by land-based third parties" are resolved. The Committee then expressed its intent in the following terms: "The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in nonmaritime pursuits liable under similar circumstances." *Id.*

Since the vessel's liability was "to be based on its own negligence", and it would no longer be liable under the unseaworthiness doctrine for injuries which are "really" the fault of the stevedore, the Committee believed there was no longer "any necessity" to allow the vessel to recover over against the stevedore. Recovery over and indemnity agreements were therefore to be prohibited, it being "the Committee's intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort." *Id.*

Finally the Committee expressed its intention that "the negligence remedy" should be applied as a matter of "Federal law" and not in accordance with the laws of the states. Specifically the Committee intended that "the admiralty concept" of comparative negligence, rather than the common law rule of contributory negligence, should apply where the employee's "own negligence may have contributed to causing the injury", and that "the admiralty rule" precluding the defense of assumption of risk should obtain. House Report, p. 4705.

■ The amendments became law in the form recommended by the Committee. Thus the exclusive obligation of the stevedore on account of the injury is to make the compensation payments required by the Act. § 905(a). The shipowner has no liability to the longshoremen on the basis of unseaworthiness and is subject only to liability for its negligence. § 905(b). The acceptance by the longshoreman of compensation under the Act operates as an assignment to the stevedore of the longshoreman's right to recover damages from the ship unless he brings action within six months. § 933(b). When the longshoreman does not bring action within six months the stevedore may retain out of any judgment it obtains the compensation and expenses plus one fifth of the remaining recovered funds with the balance being paid to the longshoreman. § 933(e). If the longshoreman brings action and recovers from the ship, the stevedore must pay only the excess of the compensation over the amount of the recovery. § 933(f). The stevedore may thus recoup fully its compensation payments out of the longshoreman's recovery. *Landon v. Lief Hoegh and Co., Inc.,* 521 F.2d 756 (2d Cir. 1975), *cert. denied,* 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976); *Zapico v. Bucyrus-Erie Co.,* 579 F.2d 714 (2d Cir. 1978).

What is striking about the House Report is that it does not discuss the rules to be adopted where the negligence of both vessel and stevedore contribute to the injury. The Committee was not unaware that negligence of more than one person could play a part. The Report refers to the admiralty concept of comparative negligence and to the contribution a plaintiff's negligence may make to causing the injury.

Where the ship has been at fault but the stevedore's negligence has also contributed in a major way, some courts have deemed it unfair to visit the entire damages on the ship and have struggled to reduce its liability. See, for example, *Edmonds v. Compagnie Generale Transatlantique,* 558 F.2d 186 (4th Cir. 1977) modified en banc June 22, 1978. But even assuming the matter is still open in this circuit after the *Landon* and *Zapico* cases, *supra,* in the case at bar defendant did not urge a proportionate reduction of its liability because of the fault of the stevedore.

■ The plaintiff may thus recover against the ship the full damages caused by the negligence of the ship and stevedore while the ship has no recourse against the stevedore. Admittedly this may shift from the stevedore to the ship damages which in fairness ought to be borne by the former. But that fact hardly justifies a rule making the ship liable only where the stevedore is not negligent at all. *Cf.* the dissent in the *Canizzo* case, *supra,* 579 F.2d at 688. Such a rule would be simple, but it would absolve the ship of liability (and reduce the plaintiff's recovery) in instances where the ship is chiefly at fault.

Moreover such a result could hardly be reconciled with the House Committee's example of a longshoreman slipping on oil which the ship "knew" was there or which had been there so long that the spill "should have been discovered" by the ship. The Committee contemplated that in either case the ship could be held liable if in the exercise of reasonable care it did not remove the oil. House Report, p. 4704.[1] In the case

---

**1.** The final sentence of the paragraph setting forth the oil spill example recites that the vessel is not "chargeable" with the negligence of the stevedore. In context it seems clear that the sentence simply means that the ship is liable for its own negligence and not, under the doctrine of unseaworthiness, for that of the stevedore.

where the ship "knew" of or "should have discovered" the oil, the Committee nowhere suggests that the ship's negligence should be condoned because the stevedore rather than some third party negligently spilled the oil. Indeed, the House Report suggests that one purpose of permitting actions against the vessel based on negligence was to encourage safety by requiring the ship "to exercise the same care as a land-based person in providing a safe place to work." House Report, p. 4704. That objective is the same whether the danger has initially been created by the stevedore or by some one else.

However, given the circumstances of the passage of the 1972 amendments it is surely appropriate in formulating a "Federal law" of negligence to take into account the peculiar relationships between ship and stevedore. While the House Report on several occasions analogizes the liability of the ship to that of "land-based" third parties, that language is evidently used to make it clear that liability cannot be based on the admiralty doctrine of unseaworthiness. The report can hardly be read to require the mechanical adoption of rules designed for land-based torts where the relationships between the parties are different from those between ship and stevedore under the Act. The Committee appears to have expected instead that the courts through the "ordinary process of litigation" would apply "accepted principles of tort law" and thus develop rules appropriate to the circumstances to resolve the disputes bound to arise. House Report, p. 4704.

■ In the light of the functions which the stevedore performs for the ship and considering the respective duties of both under the Act, it seems reasonable to allow the ship to assume in the first instance that the stevedore will rectify any unsafe condition of which it has or should reasonably have knowledge, which it has the power to correct, and which it should correct in order to fulfill its obligation to maintain for the longshoremen safe working conditions. But it is only fair to impose liability on the ship where it can reasonably expect that the stevedore will not correct the condition. This does not mean that the ship can conclusively assume that the stevedore will fulfill its obligations imposed either by statute, 33 U.S.C. § 941, or by regulation, 29 C.F.R. part 1918, to furnish a safe place of employment for the longshoremen. There are numerous instances in the law where it is negligence not to foresee negligence on the part of another. See, e. g., Twerski, *The Many Faces of Misuse: An Inquiry into the Emerging Doctrine of Comparative Causation*, 29 Mercer Law Review 403, 420ff. (1978). People have been known to disregard their duties, and if it can reasonably be foreseen that they will do so, there is no reason for the law to close its eyes to the fact.

A further refinement based on which party initially caused the dangerous condition seems appropriate. In terms of the Congressional objective of "encouraging safety", House Report, p. 4704, it is perhaps more effective to deter the creation of a hazardous situation than to induce its removal. In any event in most instances the law tends to impose liability on an active rather than a passive wrongdoer. See *Slattery v. Marra Bros.*, 186 F.2d 134, 138 (2d Cir.) *cert. denied*, 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351 (1951). Thus, if the ship has caused the condition, it should be liable unless it can reasonably expect the stevedore to rectify it. On the other hand if the stevedore has caused the condition, then the burden of proving negligence on the part of the ship should be greater. In that instance the ship should only be held liable if it reasonably expects the stevedore not to correct the situation. The jury was so charged in the case at bar.

These rules, making the liability of the ship turn on its reasonable expectation of what action the stevedore will or will not take, while obviously not a completely satisfactory solution, come as close to reconciling the conflicting interests which Congress apparently had in mind as any that this court can think of.

The principles set forth here appear to be consistent with the results in the recent pertinent Second Circuit cases, with the possible exception of *Cox v. Flota Mercante Grancolombiana, S. A., supra.* In *Munoz v. Flota Mercante, S. A.,* 553 F.2d 837, 840 (2d Cir. 1977), there was "not a shred of evidence that the shipowner knew of the defect" created by a makeshift pathway made of boxes of cargo arranged by the stevedore in step-like tiers. The pathway had been deliberately created not by the ship but by the stevedore as its method of loading the cargo, and since the ship had no duty to supervise the minute details of work entrusted to the stevedore, the ship was held not negligent. A similar situation existed in *Ruffino v. Scindia Steam Navigation Co.,* 559 F.2d 861 (2d Cir. 1977). There the plaintiff was removing rugs and stepped on the end of a rug which overhung a space between two pallets to which were strapped wooden boxes containing tea. The unsupported rug bent under the plaintiff's weight, and he lost his balance and fell. There was no proof which would permit an inference that the shipowner had any knowledge of the hidden condition, and judgment was given for the shipowner.

In *Hickman v. Jugoslavenska Linijska, etc.,* 570 F.2d 449 (2d Cir. 1978), the longshoremen were loading bales of rags. They complained to the mate that they could not walk on the bales already present because of the spaces in between them and asked for dunnage to make a floor. The mate replied that there was dunnage in the 'tween deck and that they should make a floor for themselves. That dunnage was insufficient to make a completely tight floor, and plaintiff fell when he stepped on a bale which moved. Plaintiff admitted there was additional dunnage on the pier but neither the longshoremen nor the stevedore made any effort to obtain it to complete the floor. Nor did they ask for further dunnage. There was apparently no evidence that tended to show that the stevedore would not correct the situation, and judgment was entered for defendant.

*Lubrano v. Royal Netherlands Steamship Company,* 572 F.2d 364 (2d Cir. 1978), was a case where the shipowner was found liable when the plaintiff's fall was caused by the absence of dunnage. But in that case there was proof from which the jury might have concluded that a ship's officer approved and joined in the stevedore's direction that the men keep working despite the absence of dunnage. Thus the ship could "reasonably apprehend that work might continue and an injury occur." 572 F.2d at 367. In other words the ship could reasonably anticipate that the stevedore would not correct the condition. In *Canizzo v. Farrell Lines, Inc., supra,* the plaintiff was injured when he slipped on a patch of grease partially covered by a pile of wires which had been placed on the deck by the ship's crew about one half an hour before. Holding that the crew "should have seen" the grease when they put the wires out and "should have anticipated" the dangerous condition created by the grease and the wires, the Second Circuit affirmed the District Court's conclusion that the ship either created a dangerous condition by placing the wires on the deck or observed or should have observed the greasy patch creating an obviously unsafe condition. From the Second Circuit's citation of Section 343A of the Restatement (second) of Torts (1965) [2] it is evident that the majority opinion concluded that the ship could reasonably "anticipate" that the stevedore would not correct the condition which caused the injury.

The *Canizzo* majority opinion recites that the result "cannot reasonably be reconciled" with the result in the *Cox* case. Nor, so far as this court can see, can that result be harmonized with the rule adopted in the case at bar. In the *Cox* case the ship's mate was told several times that pins were missing from beams supporting a hatch cover, and the mate said "we're going to take

---

**2.** That section provides in pertinent part: "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor *should anticipate* the harm despite such knowledge or obviousness" (emphasis supplied).

care of it." A beam was thereafter dislodged, and it and the hatch cover fell injuring plaintiff. The jury could have inferred that the ship, in the light of the mate's statement that the ship would "take care of" the situation, reasonably anticipated that the stevedore would not take the requisite measures. Nevertheless the court held that a verdict for the ship should have been directed. There appears to be no principled way in which to reconcile this result with a rule which imposes liability on the ship when it has reason to believe that a dangerous condition will not be corrected by the stevedore.

In the most recent Second Circuit opinion on the subject, *Lopez v. A/S D/S Svendborg, supra,* the court held for the plaintiff longshoreman. There the ship's officer was asked by the hatch boss what the ship intended to do "with the mess" of shifted and damaged cargo, including kegs of bolts which had broken open, scattering bolts throughout the cargo. The officer replied: "Keep working, the cargo got to come out of the ship, tell your men to be careful." The plaintiff was thereafter injured when he stepped on a loose bolt which had sifted through the cargo to the floor of the hold. Clearly the ship had knowledge that the longshoremen would continue to work despite the conditions. From the officer's remarks it is also evident that the ship did not expect the stevedore to pick up the bolts and replace them in kegs prior to continuation of the longshoremen's work.

As noted above, defendant also urges that plaintiff failed to prove that defendant should reasonably have foreseen that plaintiff might be injured by stepping on the sand and pebbles. Defendant points to that part of the testimony of the hatch boss, Anthony Carbonaro, where he said "there could have been danger but I felt there was no danger at all." However, he admitted that the longshoremen complained to him about the condition and that he then asked the ship's mate to have the sand and pebbles cleaned up. He also testified that "if there were pebbles on steel" he would consider that a "dangerous" condition. There was testimony that pebbles were present with the sand.

The characterizations of the condition by the hatch boss were only one factor which the jury could consider in determining whether plaintiff was afforded an unsafe place to work. Certainly the jury could find that the longshoremen were sufficiently concerned to complain about the condition and ask to have it cleaned up. The jury could also conclude that the ship could have anticipated that the longshoremen would not stop work until the condition was rectified.

Defendant contends that since neither plaintiff nor Carbonaro foresaw that plaintiff would be injured by slipping on the sand and pebbles, the defendant could not reasonably have foreseen the injury. But the test is not whether the ship can foresee a specific occurrence. It is enough if the ship knows the dangerous condition is "unlikely to be avoided by the longshoremen." *Canizzo v. Farrell Lines, Inc., supra,* 579 F.2d at 685. The fact that the longshoreman negligently fails to avoid the danger does not excuse the ship. Its personnel may not assume that other mortals are infallible. Contributory negligence may reduce the damages but it does not bar the action.

The motion is denied. So ordered.