**Anthony GAROFALO, Plaintiff,**

v.

**MALAYSIA OVERSEAS EXPORT LINES, INC., Defendant.**

No. 77 Civ. 4250 (IBC).

United States District Court, S. D. New York.

May 2, 1979.

Zimmerman & Zimmerman, New York City, for plaintiff.

Hill, Betts & Nash, New York City, for defendant; Robert S. Blanc, Gregory W. O'Neill, New York City, of counsel.

2. Since no responsive pleading has yet been filed the plaintiff may amend his complaint as of right. Fed.R.Civ.P. 15(a).

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiff, a longshoreman, seeks recovery against the defendant, a shipowner, of damages for personal injuries suffered when plaintiff was working as a longshoreman aboard defendant's vessel, the Oriental Hero. The accident occurred on December 20, 1974, at which time plaintiff was employed by the Universal Maritime Service, Inc. (UMS), a stevedoring contractor which had been retained by defendant to unload the Oriental Hero. Plaintiff was specifically employed as a sorter, his task being the checking and sorting of cargo, which was to be removed at various landing points.

By means of a pre-trial consent order signed on March 15, 1979, the parties stipulated to the facts above, and designated the issues on trial as follows: Plaintiff claims that defendant was negligent in failing to provide a safe place to work; that the defendant is strictly liable without tort in failing to maintain the ship in a safe and seaworthy condition; and that defendant was on notice of the alleged defect which caused plaintiff's injury.

Defendant maintains that he was without knowledge of any defect or dangerous condition, and that the ship had provided a normal and reasonably safe work area; that the accident occurred solely through the fault of the stevedore and its longshoremen.

Defendant moved for a directed verdict at the close of plaintiff's case at trial to the Court, on the grounds that plaintiff had failed to make out a prima-facie case of negligence. The Court granted defendant's motion as a matter of law, based on the evidence adduced at trial by the plaintiff, and enters this Memorandum Opinion in support of its disposition.

The relevant facts follow. As mentioned above, plaintiff was a sorter engaged to work on board defendant's ship. He was a member of a longshoreman "gang" of 16 or 17 men, plus a foreman or "hatch boss",

supplied by UMS pursuant to contract with defendant.

On the date in question, plaintiff was sent to work on the 'tween deck in Hatch No. 3. The hatch covers on the main deck had been removed, and thus the hatch square of the 'tween deck was open to the air. The floor of the hatch square on the 'tween deck was covered with debris— dunnage, papers, wires, hard plastic, etc. All the cargo was stowed in the wings, around the sides of the 'tween deck square.

Eight other longshoremen in plaintiff's gang had commenced work on the 'tween deck in the No. 3 hold around 8:00 a. m. that same day. They were cleaning up the debris in the square which covered the entire center area of the deck. It is clear from the trial testimony of one of plaintiff's co-workers that the debris in the square had to be cleaned up before the longshoremen could begin unloading the cargo, and that several members of the gang had set to work doing so at once. (Trial transcript, p. 80).

Plaintiff went onto the 'tween deck around 8:15 a. m. He testified at trial that he worked sorting cargo on the inshore wing of the 'tween deck for about half an hour.[1] Then, plaintiff claims, he had to get over to the offshore wing to sort the cargo there. He alleges that there was not much room to walk around the square, although on cross-examination he was unable to remember whether cargo was stacked right up to the edge of the square, or whether there was a walkway around it.

In any case, plaintiff decided that he had to go across the square to get to the offshore cargo. His own testimony reveals that the floor of the square where he crossed was covered with dunnage and debris, and that the other men were busy cleaning up the debris in another part of the square. (Trial transcript, p. 25).

Plaintiff testified that he was being very careful because of all the debris he saw, but that upon his first step into the square,

---

1. This testimony at trial contradicted the plaintiff's own deposition testimony, that he had only been working for 5–10 minutes before the accident occurred.

right in the middle of the hatch area, he stepped on some paper, his foot went into a hole, and he fell and injured his leg—that being the injury for which he claims damages here.

Upon examination of the area after his accident, it turned out that a piece of one of the hatch-covers, which made up the floor of the square, was missing. The hole would have been obvious had the floor not been covered with debris. The testimony shows that after plaintiff was injured, and left the deck, the other longshoremen nailed a board over the hole and continued with their work. (Trial transcript, pp. 84–85).

Plaintiff was asked on cross-examination whether he had made any complaints about any condition in the square while he was there. He testified that neither he nor, to his knowledge, anyone else, made any such complaint—not even to their own hatch boss, much less to any member of the crew. (Trial transcript, pp. 58–59).

## THE APPLICABLE LAW

■ Since the 1972 amendments to the Longshoremen and Harbor Workers Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*, a longshoreman may seek recovery for personal injury against a shipowner only on a theory of negligence. The old admiralty doctrine of unseaworthiness—liability without fault—is no longer applicable to suits by dock-workers. Congress has mandated that the remedy for such suits lies in seeking compensation from the stevedore, unless the shipowner is clearly shown to be negligent in its duties. *Munoz v. Flota Mercante Grancolombiana, S.A.,* 553 F.2d 837 (2d Cir. 1977).

■ The 1972 amendments were intended to provide for "adequate, increased and sure compensation for injured longshoremen, elimination of the rubric of liability without fault for shipowners, and encouragement of safety within the industry by placing the duty of care on the party best able to prevent accidents." *Munoz, id.,* at 839.

■ It is generally accepted that "land-based principles of negligence" provide the standard of care in these cases. *Napoli v. [Transpacific Carriers, etc.] Hellenic Lines,* 536 F.2d 505 (2d Cir. 1976). In accordance with the amendments, a shipowner can only be held liable for the results of his *own* negligence, and not on a strict liability basis for the negligence of the stevedore or for defects of which the shipowner had no actual or constructive knowledge.

There is a conflict within our circuit as to the extent of liability of each, where both the shipowner and the stevedore may be deemed to be negligent; particularly where "an independent stevedore [is] given complete control over the loading of a ship." *Canizzo v. Farrell Lines, Inc.,* 579 F.2d 682, 685 (2d Cir. June, 1978). In *Canizzo, id.,* at 685, the Court stated that:

> Under the relevant provisions of the Restatement (Second) of Torts (1965), possessors of land, and hence shipowners . . . are absolved from liability when dangerous conditions are known or obvious [to the invitee or longshoreman], except when the [shipowner] should anticipate the harm despite the invitee's knowledge or the obviousness of the condition. (§ 343A). . . . *A shipowner, however, can only be liable under § 343A if he knows or should have known of the obviously dangerous, but unavoidable, condition.* (emphasis added)

The Second Circuit Panel in *Canizzo* emphasized that a case-by-case analysis is the best approach in this area:

> Too strict a view of a shipowner's liability in these situations would do much to diminish the salutary effects of the 1972 amendments by, in effect, making shipowners liable, once again, on what is akin to an unseaworthiness standard . . . .
>
> Too lax a view would specifically contradict the Congressional intention to make shipowners liable for their own negligence under the amended statute. *Id.* at 685.

A brief summary of the factual holdings in the precedential cases in our circuit may

help clarify our considerations, and the basis for our decision here.

In *Napoli v. Hellenic Lines, supra,* the Circuit Court held a shipowner liable for injuries, where the ship's crew was acting as its own stevedore. The Court found that since the crew itself may have created the dangerous condition, the shipowner certainly was on notice of it, and had a duty of care to the longshoremen even where the danger was obvious to them. The shipowner could "reasonably . . . anticipate that [the longshoremen] would not be able to avoid the danger," *id.* at 509, as they had no independent supervisor to handle the situation and mediate for them with the shipowner. In short, the shipowner there was the person best able to prevent harm from obvious dangers in premises under its control.

In *Munoz v. Flota Mercante Grancolombiana, S.A., supra,* the Court found a shipowner *not* liable in damages for injury to a longshoreman, where the independent contractor, a stevedore company, had itself created a latent, dangerous condition within the area where its men were working. There was no evidence of notice to the shipowner of any defect; and the Court found, on behalf of the shipowner "no duty to supervise the minute details of work totally entrusted to the competence of the stevedore." *Id.,* at 840.

In *Ruffino v. Scindia Steam Navigation Co., Ltd.,* 559 F.2d 861 (2d Cir. 1977), the shipowner was found free of liability for latent defects created by the *on-loading* stevedores, which caused injury to an *off-loading* longshoreman. The ship was without notice; the defect was latent, not open and obvious; it had been created by a stevedore; and again it was held that the shipowner had had no obligation to "supervise the minute details of the loading stevedores' work." *Id.,* at 863.

In *Lubrano v. Royal Netherlands Steamship Co.,* 572 F.2d 364 (2d Cir. 1978), the Circuit Court remanded a case for trial to the jury, wherein the trial judge had directed a verdict in favor of the shipowner. The Court found that the longshoremen had given notice to both the stevedore company and to the ship's officer that a dangerous condition existed in the hold. The shipowner was held to have breached its duty of care by joining in a decision to allow the longshoremen to continue work without remedying the situation. Judge Moore, dissenting, argued that the negligence lay clearly with the stevedore, who remained in control of the work area, with knowledge of the defect, and that liability rested solely on the stevedore, even though the shipowner was on notice of the condition.

The case of *Cox v. Flota Mercante Grancolombiana, S.A.,* 577 F.2d 798 (2d Cir. 1978) gave birth to the present division of opinion as to the proper interpretation of the law in this area. Both the ship's representative and the stevedore were made aware of an obvious and potentially dangerous defect in working conditions. The Court held the shipowner to be free from liability for injuries caused, because no member of the crew had taken any part in the decision to keep working, but rather had left the entire situation in the control of the longshoremen upon whom they were entitled to rely, and who could be expected to remedy a situation normally within the scope of their expertise. Thus, the Court found the shipowner had no duty to supervise the work-area even when on notice of a potentially harmful defect, where the particular condition was clearly within the scope of the stevedore's duty to rectify.

The Second Circuit Panel in *Canizzo v. Farrell Lines, supra,* firmly rejected this view of a shipowner's liability for negligence. In that case, the Court again found that the shipowner was on notice of an open and obvious danger. Despite the fact that the stevedore also knew of the defect, the shipowner was held liable on the grounds that the ship's crew had created the dangerous condition, and should have foreseen that the longshoremen would be unable to avoid it. Thus, they had a duty to supervise and warn the longshoremen, a duty which was breached.

Judge Friendly's strong dissent in *Canizzo* pleaded against a resurrection of the

unseaworthiness doctrine. In his analysis, the Court must not look primarily at whether the shipowner had knowledge of the defect, nor at whether the defect was latent or obvious, but at who was in a better position to prevent accidents; the test being whether or not the defect was one normally encountered and most easily dealt with by the expert stevedore. In this view, the shipowner should be held liable for injuries only where the stevedore is unaware of any defect, but the ship is on notice; or where the shipowner's affirmative negligence, for which the stevedore had no responsibility, caused the injury.

The heart of the conflict, then, is whether, where both the stevedore and the shipowner share in negligent acts toward the longshoreman, the greater responsibility of the stevedore excuses that of the shipowner. The *Cox* line of thought basically holds that a shipowner's knowledge of a dangerous condition will not render it liable in cases normally within the special competence of the stevedore to cure; while the opposing view, *Canizzo, et al.,* holds that the joint negligence of the stevedore will not *excuse* the shipowner with knowledge of a defect, whether latent or obvious.

Returning to the case at hand, the facts make this case comparatively clear-cut. There is absolutely no evidence that the shipowner had knowledge—actual or constructive—of the defect. The defect was latent (a broken hatch-board hidden under debris of all kinds); and at no time did the longshoremen complain of the debris, much less of a broken hatch-cover, to the crew.

In fact, at the time of the accident, the stevedore's crew was engaged in precisely what it was their duty to do—i. e., to clean up the debris in the work-area so as to avoid an accident while unloading the cargo, whether such accident might be caused by the debris itself, or by some other hidden defect. Eight longshoremen had been cleaning in the square for half an hour to forty-five minutes before the accident occurred. In this case, the stevedore clearly was in the best position to prevent an accident.

If anyone was at fault, it was the plaintiff himself who stepped deliberately into an area he knew was potentially dangerous, avoiding that part of the square which had already been cleared by his co-workers. If plaintiff felt it was beneath him to clear a walkway by himself, surely he could have complained to his boss, or called the other workers over to clear him a path.

To argue, as plaintiff does, that the hatch-cover, being a structural part of the ship, was solely the responsibility of the shipowner, is to ignore the fact that it was the stevedore's responsibility to clear the area in order to reveal such defects. For the longshoremen to proceed with the unloading of cargo without first clearing the work-area is akin to polishing a floor before removing the dust, dirt and debris upon it. Safety and Health Regulations for Longshoring, 29 C.F.R. § 1918.91. It cannot be said that the shipowner could reasonably have foreseen that the plaintiff would be unable to avoid any such condition.

Unlike the *Canizzo* prototype, there is no evidence that the ship had in any way created the dangerous condition, nor was the ship's personnel on notice of the defect, nor could there be any foreseeability that the stevedore's men would be unable to avoid the danger—actually their very first, self-acknowledged task was to clear the work-area to avoid just such mishap as befell the plaintiff.

This is clearly a case where the plaintiff, as a matter of law, has failed to adduce evidence proving notice on the part of the defendant, and thus has failed to make out an imperative element of negligence. To say that the shipowner is liable *without notice,* would be to fly in the face of the 1972 amendments to the LHWCA, and has no support whatever among the cases in this Circuit. The shipowner can be held liable only for his own negligence.

Defendant's motion for a directed verdict is granted.

SO ORDERED.